AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with Facebook accounts<br>https://www.facebook.com/derick383 and<br>https://www.facebook.com/iyehesa.todd | )<br>)<br>)<br>)<br>)<br>)  Case No. 19- MJ - 84 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A".

located in the _____ Middle _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B".

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 2251 | Sexual exploitation of children |
| 18 U.S.C §§ 2252(A) | Certain activities relating to material constituting or containing child pornography |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Darivsh Vollenweder, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 06/19/2019 _____

_____
*Judge's signature*

City and state: Baton Rouge, Louisiana

Magistrate Judge Richard L. Bourgeois, Jr.
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Dariush Vollenweider, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with certain Facebook accounts that are stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the Facebook accounts.

2.     I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) assigned to the Resident Agent in Charge (RAC), Baton Rouge, Louisiana. I have been employed as such since March 2010. I received 22 weeks of specialized training at the Federal Law Enforcement Training Center in Glynco, Georgia.  This specialized training covered all aspects of criminal investigations. I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252, and 2252A; violations related to the transfer of obscene material to minors, in violation of 18 U.S.C. § 1470; and the coercion and enticement of minors to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422.  I have received training in the area of child pornography and child exploitation

and have had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256).

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, local law enforcement, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that **SHADERICK JONES** and **IYEHESA TODD** violated 18 U.S.C §§ 2251 and 2252A.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

*The Investigation*

5.      On or about June 8, 2019, Special Agent (SA) Dariush Vollenweider with Homeland Security Investigations (HSI) received information from the St. Gabriel Police Department, pertaining to the production, possession and distribution of child pornography involving **IYEHESA TODD** and **SHADERICK JONES**.

6.      On June 7, 2019, Katrecia Lewis reported to the St. Gabriel Police Department that the day before, she had received an anonymous message on Facebook that contained a photo and video of TODD performing oral sex on TODD's one-year old child.  Lewis provided the photo and video to the St. Gabriel Police Department.

7.     On June 17, 2019, HSI SA Vollenweider along with SA Jeff Methvin of the Federal Bureau of Investigation (FBI) conducted a follow-up interview of Lewis at the St. Gabriel Police Department.

8.     Lewis stated on June 6, 2019, she received a text message from Adrian Williams, who goes by the name Nikki. Lewis initially reported the message as an anonymous Facebook message because she was scared and did not know what to do. Lewis stated that Williams sent her a picture of a Facebook message string between JONES and TODD and a Facebook video showing TODD performing oral sex on TODD's 1 year old child.

9.     Lewis stated that she thought the video was sent to her by Williams because Williams knew that Lewis was like a godmother to the child of TODD. Lewis stated she called Williams after receiving the message and asked Williams how she got the message. Williams told Lewis that Williams got the video from Mariah Kinchen, who is the live-in girlfriend of JONES. Lewis stated that it appeared the video in question was sent from the Facebook user account of TODD because the Facebook screen name of TODD was visible at the top of the Facebook message.

10.    On or about June 7, 2019, the Iberville Parish Sheriff's Office interviewed Kinchen, which was recorded and the Affiant has viewed. Kinchen stated that JONES is her boyfriend. Kinchen stated that she sometimes uses and plays games on the computer tablet of JONES. She said that she also uses the tablet to view JONES' Facebook account to see if he is cheating on her. Kinchen stated that the tablet is connected to the phone of JONES.

11.    Kinchen was asked if she had ever observed anything inappropriate on JONES' tablet. Kinchen stated that she observed a video on the tablet of JONES that was inappropriate.

Specifically, Kinchen observed a video of a small black girl who appeared to be 8-9 years of age performing oral sex on a man.

12.    Kinchen was asked if she observed a video on the tablet of an adult doing something to a child.  Kinchen initially denied seeing any such video.  She eventually admitted to seeing a video on the tablet, in a conversation thread on JONES' Facebook account between JONES and another person.  Kinchen did not send that video to anyone, but she showed the video to a friend.  Kinchen said that friend was Nikki (later identified as Adrian Williams), and that Nikki made a copy of the video by using her own phone to film the tablet as it played the video.  Kinchen said her friend Nikki knew the adult woman in the video.  Kinchen said that Nikki had sent the video to Lewis because the video contained the godchild of Lewis.  Kinchen stated that the video was sent to Lewis in order to be forwarded to the police.  Kinchen said Nikki deleted the video off from her phone after it was sent to Lewis.

13.    Kinchen said that she had been in possession of the tablet for most of June 7, 2019, and the day before, but she had returned the tablet to JONES on June 7, 2019.  Kinchen stated that JONES was trying to blame her for what was located on the tablet.  Kinchen stated that JONES cannot blame her for what was discovered on the tablet because it was the Facebook account of JONES, with the time and date displayed, that contained the video.  Kinchen said that JONES' Facebook account had a conversation with JONES and whoever else was involved with the video.  Kinchen believes the video is still located on the tablet owned by JONES.

14.    SA Vollenweider personally viewed the video in question of a black female who resembles TODD performing oral sex on a baby.  SA Vollenweider also previewed a screen shot of the video and observed that the picture also shows TODD performing oral sex on a baby.  The video and the screen shot were provided to the St. Gabriel Police Department by Lewis.  It

4

should be noted that the screen shot is of a Facebook Message thread, and it shows the video was sent three times, each at 4:34 PM. The screen shot shows that the video was sent from the Facebook account user name of Iyesha, which Affiant believes is TODD's account.

15.    Based on the foregoing information, SA Vollenweider believes that the video containing TODD and the child was shared from the Facebook account of TODD and sent to the Facebook account of JONES, using Facebook Messenger. Kinchen, the girlfriend of JONES, discovered the video on JONES' tablet and showed the video to her friend Williams. Williams filmed the video from the tablet, then sent the video to Lewis. Lewis brought the video forward to the police because she recognized TODD as the female in the video. TODD and JONES both have Facebook accounts and are listed in Attachment A that may contain evidence of violations of 18 U.S.C. §§ 2251 and 2252A.

16.    SA Vollenweider observed the profile picture in the Facebook message of TODD that was brought forward by Lewis. SA Vollenweider noted that the profile picture in the aforementioned message matched the profile picture for the user account of https://www.facebook.com/iyehesa.todd.

17.    SA Vollenweider spoke with St. Gabriel Police Department Officer Clark in reference to the Facebook profile of JONES. Officer Clark stated that Kinchen informed him that the Facebook profile of JONES contained a red logo in the profile background. SA Vollenweider discovered that the profile of https://www.facebook.com/derick383 contained a red logo in the profile picture and pictures of JONES uploaded to that account.

18.    The affiant sent preservation requests to Facebook.

a. Facebook assigned case number 3194904 for account user JONES, https://www.facebook.com/derick383

b. Facebook assigned case number 3168709 for account user TODD, https://www.facebook.com/iyehesa.todd

*Facebook*

19. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

20. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

21. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

22.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

23.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

24.     Facebook allows users to upload photos and videos, which may include any metadata such as the location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a

user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

25.    Facebook users can exchange private messages on Facebook with other users. These messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

26.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

27.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

28.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

29.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

30.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

31.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

32.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

33.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

37.    Based on the foregoing, I request that the Court issue the proposed search warrant.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

38.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

39.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**Dariush Vollenweider**
Special Agent
Homeland Security Investigations
RAC Baton Rouge, L.A.

Sworn and subscribed before me, in Baton Rouge, Louisiana, on this 19ᵗʰ day of June 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

12

## ATTACHMENT A

### *Property to Be Searched*

This warrant applies to information that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered in Menlo Park, California, associated with the Facebook accounts below:

https://www.facebook.com/iyehesa.todd

and

https://www.facebook.com/derick383

## **ATTACHMENT B**

### *Particular Things to be Seized*

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted, but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each account listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)      All activity logs for the accounts and all other documents showing the users' posts and other Facebook activities from January 1, 2019, through June 13, 2019;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, from January 1, 2019 through June 13, 2019, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos (such as location and dates such videos and photos were created, sent, or received);

(d)      All profile information; News Feed information; status updates; videos, photographs, links, articles, and other items; Notes; Wall postings; friend lists,

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All records or other information regarding device attributes, device operations, identifiers, device signals, data from device settings, network and connections and cookie data pertaining to computers, phones, and other web devices that these accounts were using to integrate with Facebook;

(g) All other records and contents of communications and messages made or received by the user from January 1, 2019, through June 13, 2019, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(h) All "check ins" and other location information;

(i) All IP logs, including all records of the IP addresses that logged into the account;

(j) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(k) All information about the Facebook pages that the account is or was a "fan" of;

(l) All past and present lists of friends created by the account;

(m)    All records of Facebook searches performed by the account from January 1, 2019, through June 13, 2019;

(n)    All information about the user's access and use of Facebook Marketplace;

(o)    The types of service utilized by the user;

(p)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(q)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

(r)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2251 and 2252A, which prohibit producing child pornography, coercion, and enticement of a minor to engage in criminal sexual activity and prohibit the possession, distribution, receipt, and production of child pornography using any means of interstate or foreign commerce, including by a computer, involving SHADERICK JONES and IYEHESA TODD from January 1, 2019, through June 13, 2019, including information pertaining to the following matters:

(a) All communications to and from SHADERICK JONES and IYEHESA TODD, including any attached videos or photos;

3

(b) Any records or communications relating to the production, coercion, or enticement of a minor to engage in criminal sexual activity or relating to the possession, distribution, receipt, or production of child pornography;

(c) Any records containing child pornography;

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating who created, used, or communicated with the Facebook accounts, including records and metadata about their identities and whereabouts;

(f) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

(g) All contact information, including full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT



for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with Facebook accounts<br>https://www.facebook.com/derick383 and<br>https://www.facebook.com/iyehesa.todd,<br>that is stored at premises controlled by Facebook | )<br>)<br>)<br>)<br>)<br>) |

Case No.   19- MJ-84

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Middle _____ District of _____ Louisiana _____
*(identify the person or describe the property to be searched and give its location)*:

Information associated with Facebook accounts https://www.facebook.com/derick383 and https://www.facebook.com/iyehesa.todd, more particularly described in Attachment "A".

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before  July 3, 2019  *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Richard L. Bourgeois, Jr. _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    6/19/19 at 1:10 pm

_____
*Judge's signature*

City and state:      Baton Rouge, LA

Honorable Richard L. Bourgeois, Jr., Magistrate Judge
*Printed name and title*



## ATTACHMENT A

### *Property to Be Searched*

This warrant applies to information that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered in Menlo Park, California, associated with the Facebook accounts below:

https://www.facebook.com/iyehesa.todd

and

https://www.facebook.com/derick383

**ATTACHMENT B**



*Particular Things to be Seized*

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted, but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each account listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)    All activity logs for the accounts and all other documents showing the users' posts and other Facebook activities from January 1, 2019, through June 13, 2019;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, from January 1, 2019 through June 13, 2019, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos (such as location and dates such videos and photos were created, sent, or received);

(d)    All profile information; News Feed information; status updates; videos, photographs, links, articles, and other items; Notes; Wall postings; friend lists,

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All records or other information regarding device attributes, device operations, identifiers, device signals, data from device settings, network and connections and cookie data pertaining to computers, phones, and other web devices that these accounts were using to integrate with Facebook;

(g)     All other records and contents of communications and messages made or received by the user from January 1, 2019, through June 13, 2019, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(h)     All "check ins" and other location information;

(i)     All IP logs, including all records of the IP addresses that logged into the account;

(j)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(k)     All information about the Facebook pages that the account is or was a "fan" of;

(l)     All past and present lists of friends created by the account;

2

(m)    All records of Facebook searches performed by the account from January 1, 2019, through June 13, 2019;

(n)    All information about the user's access and use of Facebook Marketplace;

(o)    The types of service utilized by the user;

(p)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(q)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; and

(r)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2251 and 2252A, which prohibit producing child pornography, coercion, and enticement of a minor to engage in criminal sexual activity and prohibit the possession, distribution, receipt, and production of child pornography using any means of interstate or foreign commerce, including by a computer, involving SHADERICK JONES and IYEHESA TODD from January 1, 2019, through June 13, 2019, including information pertaining to the following matters:

(a) All communications to and from SHADERICK JONES and IYEHESA TODD, including any attached videos or photos;

3

(b) Any records or communications relating to the production, coercion, or enticement of a minor to engage in criminal sexual activity or relating to the possession, distribution, receipt, or production of child pornography;

(c) Any records containing child pornography;

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating who created, used, or communicated with the Facebook accounts, including records and metadata about their identities and whereabouts;

(f) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

(g) All contact information, including full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;